**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5481-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPH DALZELL,

    Defendant-Appellant.

_____

> Submitted January 30, 2020 – Decided June 25, 2020
>
> Before Judges Alvarez and Suter.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-12-2524.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Tried by a jury, defendant Christoph Dalzell appeals his conviction and July 24, 2017 sentence, arguing the trial court made errors that warrant a new trial or resentencing. For reasons that follow, we affirm.

I.

The following circumstances are drawn from the trial record. While out with his fiancée, R.M., at the local Knights of Columbus, defendant was drinking "shots [of vodka] and a bunch of beers," having also taken Ambien and Oxycodone. They left there, stopping at a liquor store, and went home. A heated argument ensued about defendant's missing cell phone, during which he referred to R.M. profanely, telling her "[h]e should probably f[][]king kill [her]." At one point, he pushed her head into a wall. R.M remembered defendant saying something about a knife. The "[n]ext thing [she] kn[e]w[,] [she] looked down and [she] had a knife in [her]." Defendant "just walked away," going to their bedroom and sitting on the bed. With the knife protruding from her abdomen, R.M. was able to retrieve her cell phone from the bedroom–and call 911 while defendant just sat there not saying a word. On the 911 call, that she did not recall making, R.M identified defendant as the person who stabbed her. She was stabbed multiple times in her chest and abdomen.

A-5481-16T1

The police came and arrested defendant. His breath smelled of alcohol, but he walked and changed his clothes at the police station without assistance. Defendant had blood on his fingers, leg and shirt. His speech was slightly slurred.

Testifying at trial, defendant claimed he did not remember arguing with or stabbing R.M. The last thing he remembered was "[s]itting on the couch watching TV" and the next thing was "[s]itting with shackles . . . in a Tyvek suit, paper suit, asking where I was."

Defendant was convicted by the jury of the following: first-degree attempted murder, N.J.S.A. 2C:11-3(a) and N.J.S.A. 2C:5-1 (Count One); third-degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (Count Two); and fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5(d) (Count Three). He was sentenced to fifteen years imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on Count One and the other counts were merged.

On appeal, defendant raises these issues:

> POINT I
>
> THE VICTIM'S TESTIMONY EXTENDED BEYOND THE BOUNDS OF LAY OPINION TESTIMONY AND INTO THE REALM OF EXPERT TESTIMONY. FURTHER EXACERBATING THIS PROBLEM, THE

COURT FAILED TO PROVIDE THE JURY WITH AN EXPERT JURY CHARGE.

A. The Victim Provided Testimony that Exceeded the Scope of a Lay Witness When She Testified that the Knife Missed her Kidney by a 'Hair,' that She Would Have Died if it Had Punctured Her Kidney, and the Muscle is Now Destroyed.

B. The Court Erred in Failing to Issue an Expert Jury Instruction.

C. The Improper Admission of the Victim's N.J.R.E. 702 Testimony, Coupled With the Omission of an Expert Jury Charge for this Testimony, Warrants Reversal.

POINT II

THE UNDULY PREJUDICIAL, CUMULATIVE NATURE OF THE 911 CALL AND BODY CAMERA RECORDING SUBSTANTIALLY OUTWEIGHED THEIR PROBATIVE VALUE.

POINT III

THE TRIAL COURT FAILED TO VOIR DIRE [TEN] OF THE [TWELVE] JURORS AFTER JUROR NUMBER [FOURTEEN] HAD CONDUCTED OUTSIDE RESEARCH ABOUT JURY DELIBERATIONS, PRINTED OUT THE NET OF HIS RESEARCH, AND SHOWED IT TO THE FOREPERSON, AT A MINIMUM.

POINT IV

THE CASE SHOULD BE REMANDED FOR RESENTENCING, BECAUSE THE SENTENCE IS

4

MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

A. The Court's Finding of Aggravating Factor Nine was Flawed, Because it Improperly Relied Upon Mr. Dalzell's Purported Failure to Acknowledge Responsibility and the Nature of the Crime Itself.

(i) Mr. Dalzell's Purported Failure to Show Remorse.

(ii) The Nature of Offense.

B. The Court's Refusal to Find Mitigating Factor Seven Stemmed from an Improper Consideration of Charges that were Ultimately Dismissed.

C. The Sentence Should Be Reduced Given NERA's Real-Time Consequences.

## II.

Raised for the first time in this appeal, defendant argues he was deprived of due process, requiring a new trial, when R.M. testified without first being qualified as an expert witness. He contends the court failed to give the jury instructions about expert testimony.

We review this issue for plain error. Under this standard, reversal of defendant's conviction is required if there was error "clearly capable of producing an unjust result." R. 2:10-2.

A-5481-16T1

On cross-examination by defendant's attorney, R.M. was asked whether there was damage to her organs.

Q.    Any damage to any organs or –

A.    It was one hair miss of the main artery of my kidney or I would have died.  But the muscle is destroyed.

Q.    So there was no organs that were damaged?

A.    No, they took my . . . intestines out to see it, because it was a jagged knife, but thank God there was nothing.

Q.    They didn't have to replace any part of your intestines?

A.    No.

Q.    Small intestine?

A.    No.  They had to sew up the muscles.

Q.    So it was muscle damage only?

A.    Uh-huh.

Q.    Okay.

A.    Yes.  Yes.

Expert testimony is required "to explain complex matters that would fall beyond the ken of the ordinary juror."  State v. Fortin, 189 N.J. 579, 596 (2007).  An expert may offer an opinion.  A layperson may only offer an opinion if it is

6

"rationally based on the perception of the witness . . . [and] will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701.

We discern no error requiring a new trial. R.M.'s testimony—solicited in response to a question from defense counsel—was about her personal understanding of her injuries, not that they actually were so. It was not presented to prove the actual proximity to an artery, the threat of death or extent of damage. This did not require a jury instruction on expert witnesses. And, given the other evidence in the trial about stab wounds, was not "clearly capable" of producing an unjust result.

Defendant contends that both the 911 call and body camera footage were unduly prejudicial, and outweighed any probative value, because R.M. testified to the jury about her injuries, making this other evidence cumulative. We review this evidence issue for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). The trial court is afforded "[c]onsiderable latitude" in deciding whether to admit evidence. State v. Feaster, 156 N.J. 1, 82 (1998). We will not substitute our judgment for the trial court, unless its ruling "was so wide of the mark that a manifest denial of

justice resulted." State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

That was not the case here. That the 911 call and body camera footage may not have been helpful to defendant because they were made at a time when R.M. was "still under the stress of the injury," did not mean they were "unduly" prejudicial. They were made during the emergency, showed the crime scene and were relevant "to the issue of any intoxication defense." As evidenced by the trial court's deletion of a portion of the 911 call and admission of only a part of the body camera footage, we are satisfied the trial court carefully weighed the potential prejudicial effect of the 911 call and body camera footage against their unchallenged probative value.

The trial court excused juror fourteen after he gave the jury foreperson a copy of a document entitled "Suggestions for Jury Deliberations" that he obtained from the internet, contrary to the court's unequivocal instruction not to "conduct any Internet or any other personal research." Defendant argues the court committed error because it did not question each juror about his or her knowledge of the document.

A voir dire should occur where a jury may be in possession of extraneous information. See State v. R.D., 169 N.J. 551, 562-63 (2001). "But the decision

to voir dire individually the other members of the jury best remains a matter for the sound discretion of the trial court. No per se rule should obtain." Id. at 561.

Having been raised for the first time on appeal, the issue is reviewed for plain error. See R. 2:10-2. The jury foreperson brought the issue to the attention of the court first thing in the morning on the second day of deliberations. She told the court upon questioning that she would follow the court's directions and the document would not interfere with her ability to render a fair and impartial verdict. The foreperson did not think the document had been shared with anyone else, a fact confirmed by the court when it questioned juror fourteen. The document had nothing to do with the case itself. Juror fourteen was excused. The jury was instructed the reason was personal to him, and the court asked them not to speculate otherwise. There was nothing about these unobjected-to procedures or instructions that were "clearly capable of producing an unjust result . . . ." R. 2:10-2.

Defendant argues his sentence was excessive and did not take into consideration the real time consequences. He contends the court erred by finding aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), and by not finding mitigating factor seven, N.J.S.A. 2C:44-1(b)(7). There was no abuse of discretion by the trial court, however, because the aggravating and mitigating

factors were "based upon competent and credible evidence in the record" and the sentence was not "shock[ing] [to] the judicial conscience." State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Defendant was sentenced in the midrange for his conviction of first-degree attempted murder, which then was subject to NERA. In finding aggravating factor nine, the trial court considered the nature the offenses and that defendant lacked remorse for them. "[L]ack of remorse indicate[s] that a prison sentence is necessary to deter defendant from similar conduct in the future . . . ." State v. Rivers, 252 N.J. Super. 142, 154 (App. Div. 1991). "[T]he extent of injury inflicted . . . is a substantial aggravating factor." State v. Noble, 398 N.J. Super. 574, 599 (App. Div. 2008).

The record supported the court's findings. Defendant's letter to the court expressed remorse not for his crime but for "the tragic accident that happened to [R.M.]." He did not have a "memory of that evening" and knows it happened, "but . . . just can't see it." The victim was stabbed with a lengthy serrated knife, left protruding from her body. Defendant walked away and sat on the bed without assisting her.

The court did not find mitigating factor seven applied[1] noting "[t]he fact that [prior restraining orders] were dismissed and that this is the first Superior Court conviction hardly supports a finding of any kind of law[-]abiding life." Defendant argues the court erred by relying on dismissed charges, see State v. K.S., 220 N.J. 190, 199 (2015), but "[a]dult arrests that do not result in convictions may be 'relevant to the character of the sentence . . . imposed.'" State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (quoting State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991)).

The record does not support the defense claim the court failed to consider the real time consequences of defendant's sentence. It made express reference to the "real time in this matter" calculating the days defendant had to serve before he could be eligible for parole. The court was not required to reduce the sentence on account of the application of NERA. "[T]he impact of the eighty-five percent period of parole ineligibility on the time defendant would spend in custody [is] not [a] statutory mitigating factor[] and thus did not need to be addressed by [the court] in sentencing." State v. Bieniek, 200 N.J. 601, 610 n.1

---

[1] N.J.S.A. 2C:44-1(b)(7) (providing "no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense . . . .").

(2010).  Therefore, the issues raised by defendant do not constitute a basis for resentencing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5481-16T1